IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ANGEL MARIE LUCAS;
A'MYLAH A'REEN-LUCAS SIMMONS;
A'MYREON A'MERH-LUCAS;
ROC'KET SKY'LAR HARRINGTON,

          Plaintiffs,

v.                                 Case N0. 3:14-cv-29289

FAYE ALLEN; B. ADKINS; M. TERRY;
CABELL COUNTY PROSECUTORS;
CABELL COUNTY MAGISTRATE WOLFEL;
CABELL COUNTY JUDGE FURGERSON;
HUNTINGTON POLICE KOLHER;
HUNTINGTON DETECTIVE KOFFEE;
WESTERN REGIONAL JAIL—"MR. CRAWFORD,
MR. ALDRIDGE, MS. STEPP;" and
CHILD PROTECTION SERVICE—
"MS. LAUREN S. and DIRECTOR,"

          Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Plaintiff Angel Lucas's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), which she filed contemporaneously with a *pro se* Complaint asserted under 42 U.S.C. § 1983. (ECF No. 2). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Given that this Court clearly cannot provide the relief sought by Plaintiff, the undersigned **RECOMMENDS** that the presiding District

1

Judge **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), **DISMISS** the Complaint, without prejudice, and remove this action from the docket of the Court. In conjunction with the dismissal, the undersigned further **RECOMMENDS** that the presiding District Judge **DENY** an assortment of motions that have been filed by Plaintiff since her submission of the complaint, including the following: (a) Plaintiff's Motion to Dismiss, (ECF No. 8); (b) Plaintiff's Motion for Extra Time to Mail Discovery, (ECF No. 10); and (c) Plaintiff's Motion for Protective Order, (ECF No. 14).

## I.    Relevant Procedural Background

Plaintiff Angel Marie Lucas ("Lucas"), a pretrial detainee at the Southern Regional Jail in Beaver, West Virginia, (ECF No. 12), filed the instant action on December 3, 2014. At that time, Lucas was incarcerated at the Western Regional Jail in Cabell County, West Virginia. In the Complaint, Lucas alleges that on April 9, 2014 she was wrongfully arrested and charged with two counts of wanton endangerment. (ECF No. 2 at 4). The charges stemmed from an incident that occurred three days earlier, when Lucas was involved in a shoot-out on a residential street in Huntington, West Virginia.[1] She was taken before a judge, who set an excessive and discriminatory "cash only" bond of $100,000, after seeing photographs of Lucas that Huntington police officers and detectives had taken from Lucas's Facebook page. (*Id.*). Lucas's complaint is not entirely clear, but at some point she alleges that she was released on home confinement. (*Id.* at 5-6). She contends that Defendant Faye Allen, a Cabell County Circuit Court Clerk, subsequently made a false report claiming that Lucas had

---

[1] *See* ECF No. 15-1 at 6-8. In other documents provided by Lucas to the Court, she claims that she and her fiancée were in a vehicle when shots were fired at them, striking Lucas's fiancée in the head and killing him. (ECF No. 15-1 at 15-16). Fearing for her life, Lucas took out her licensed .45 caliber pistol and shot back. (*Id.*).

threatened and intimidated a city official. As a result of this report, Lucas was charged with a violation of home confinement and was taken before Judge Furgerson [sic]. She claims that Judge Furgerson [sic] banned her from the Cabell County courthouse.

Lucas alleges that thereafter Child Protective Services ("CPS") became involved in her business when some unknown person falsely reported that her three minor children were left home alone while she was incarcerated. (ECF No. 2 at 6). At the same time, one of Lucas's daughters was arrested on a bench warrant related to a 2013 charge that Lucas contends had been resolved in 2013, but her daughter was handcuffed, shackled, and taken to a juvenile detention facility nonetheless. (*Id.* at 7).

Lucas was released from custody on September 24, 2014, and was rearrested on October 1, 2014 for child neglect and abuse with injury after her son accused her of beating him with a belt and stomping on his head. (*Id.* at 7). Lucas appeared in Cabell County Magistrate Court on the neglect and abuse charge, believing that she had a deal worked out with CPS that would prevent her from being charged with a felony, but the deal was taken off the table before it could be approved by the court. Lucas has remained in custody since that time and was transferred from the Western Regional Jail to the Southwestern Regional Jail and then to the Southern Regional Jail after protesting about the conditions of confinement, including her difficulties with other inmates.

Lucas now complains that CPS has taken her children and placed them with strangers, rather than putting them in her mother's care or in the care of her daughter, Roc'ket's, father. (ECF No. 2 at 8). She also complains that she told CPS she does not want her son, A'myreon, on any medication, but he has been placed on medication anyway.

Lucas believes that she has been treated unfairly, and both she and her family have been targeted for discriminatory treatment by the defendants. She contends that reports have been falsified; judicial officers have conspired with police officers and CPS workers; the sound on the recording of her preliminary hearing was purposely destroyed to conceal the state's lack of evidence; and the state court is dragging its feet in resolving her cases. She maintains that she is a victim of "invidious discrimination," prejudice, and stereotyping in a small town where everyone knows one another.[2] (*Id.* at 5, 10).

As far as relief, Lucas asks the Court to "do what needs to be done." (*Id.* at 5). She further seeks her "rights as a human being," as well as an unspecified amount of "compensation." (*Id.*). Finally, Lucas requests that her legal matters be transferred from Cabell County to Charleston. (ECF No. 2 at 10).

On January 6, 2015, Lucas filed a document entitled "Motion to Dismiss." (ECF No. 8). In this filing, Lucas alleges that her children have been kidnapped by CPS, and both she and her children are the victims of false imprisonment. (*Id.* at 1). She asks the Court to release her children from the custody of the West Virginia Department of Health and Human Resources ("WVDHHR"), and requests a change of venue of all outstanding matters to the United States District Court for Southern District of West Virginia, so this Court can hear and determine them. (*Id.* at 2).

On January 28, 2015, Lucas filed a variety of "discovery" materials with the

---

[2] At one point, Lucas claims "false arrest/unlawful arrest" on the wanton endangerment charges. (ECF No. 2 at 4). However, she makes no factual allegations to support a cause of action for false arrest and actually confirms in a motion filed with the state court that a warrant was issued for her arrest on those charges. (ECF No. 15-1 at 6-8). Lucas does not contest the validity of the warrant. "[T]here can be no claim for false arrest where a person is arrested pursuant to a facially valid warrant." *Dorn v. Town of Prosperity,* 375 F.App'x 284, 288 (4th Cir. 2010) (unpublished). Moreover, in that same motion, Lucas states that her arrest was made by members of the Kentucky Drug Task Force, not by any of the named defendants. (*Id.*). Consequently, the undersigned **FINDS** that Lucas has not, and apparently did not intend to, assert a Fourth Amendment false arrest claim against any of the individuals named as defendants.

Court.[3] (ECF Nos. 15, 15-1). These documents consist primarily of copies of motions Lucas has filed in the state court, letters she has written to the state court judge and to the WVDHHR, and other related notes. In addition, the filing includes a petition filed by the WVDHHR to terminate Lucas's custody of her children. A review of these materials confirms that Lucas's claims in this Court revolve primarily around her desire to have her pending criminal charges and the ongoing proceedings initiated by the WVDHHR heard in federal court.

On February 5, 2015, Lucas filed additional documents with this Court, asking the presiding District Judge to subpoena the case file of her former attorney and to check into the status of the "Article 1 court" to see why the Article 1 judge was taking so long to resolve her cases. (ECF No. 13). On February 13, 2015, Lucas sent a letter to the presiding District Judge requesting that the discovery materials she sent in late January be sealed, and seeking his assistance in having her children placed in her mother's custody. (ECF No. 14 at 4). Lucas also suggests that the federal court needs to take its "rightful jurisdiction" over her criminal cases. (*Id.*).

## II.   **Standard of Review**

Under 28 U.S.C. § 1915, the Court must screen each case in which a prisoner[4] seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The Court must dismiss the case, or any part of it, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a

---

[3] Because the submission included records concerning the CPS investigation involving Lucas's young son and a petition filed by the WVDHHR's to terminate custody, the documents were filed under seal.

[4] Under § 1915, a "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(c). Thus Lucas, a pretrial detainee, is a prisoner subject to § 1915 screening.

defendant who is immune from such relief." 28 U.S.C. § 1915(b). A case is "frivolous" if it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and it lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain enough facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court explained the "plausibility" standard in *Ashcroft v. Iqbal,* stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *quoting Twombly*, 550 U.S. at 556-57 (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* at 679, citing *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007). While the Court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Id.* at 678, quoting *Bell Atlantic Corp*, 550 U.S at 555.  "In keeping with these principles a court considering a

motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679.

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>Discussion</u>

Having thoroughly reviewed the Complaint and the supporting documentation and discovery materials filed by Lucas, the undersigned **FINDS** that Lucas fails to state a viable claim for relief. First, Lucas's Complaint does not include factual allegations against any of the defendants sufficient to support a plausible cause of action under 42 U.S.C. § 1983. Second, Lucas asks this Court to intervene in her state court criminal and civil proceedings and to assume control over them. However, the Court is prohibited from interfering in pending state court proceedings absent extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). No exceptional

circumstances exist here. Finally, Lucas has failed to exhaust her state remedies, and exhaustion is required before Lucas can seek federal habeas corpus relief. *See Spencer v. Duncil,* 1:89-cv-370, 1989 WL 226142, at *1 (S.D.W.Va. May 23, 1989) (citing *Hamlin v. Warren,* 664 F.2d 29 (4th Cir. 1981)). For these reasons, the undersigned **RECOMMENDS** that the presiding District Judge **DISMISS** the complaint, without prejudice, and remove this matter from the docket of the Court.

### A.  Failure to State § 1983 Claim

Title 42 U.S.C. § 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of State law. 42 U.S.C. § 1983. In order to allege a *prima facie* claim under § 1983, a plaintiff must present facts showing that: (1) an individual defendant deprived the plaintiff of a federally protected civil right, privilege or immunity, and (2) that the defendant did so under color of state law. *See American Mfr. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983.

Title 42 U.S.C. § 1985(3) provides a federal cause of action against defendants who conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). In order to establish a cause of action under § 1985, the plaintiff must demonstrate with specific facts: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the

conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). In order to prove a "conspiracy" under § 1985, the plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.* at 1377. Moreover, the conspiracy must be established with concrete facts, as the Court will reject § 1985 claims "whenever the purported conspiracy is alleged in a merely conclusory manner." *Id.* (collecting cases); *see also Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009) (rejecting § 1985 claim which "amounts to no more than a legal conclusion").

Lucas sues Faye Allen, a Cabell County Circuit Court Clerk, for allegedly making a false report that Lucas had intimidated a city official. (ECF No. 2 at 5). Assuming Lucas can establish that Ms. Allen's alleged oral report constitutes an act done "under color of state law," Lucas cannot demonstrate how Ms. Allen's report deprived Lucas of a federally protected civil right. Lucas initially claims that the false report led to her arrest on a home confinement violation; however, she later clarifies that allegation by indicating that the arrest was actually based on a statement made by "home confinement." (*Id.*). Lucas sues two home confinement officers, B. Adkins and Mr. Terry, for allegedly making a false statement related to her arrest, but then claims that they accused her of trying to put a lien on the state judge's house, which resulted in her being banned from the county courthouse. Lucas's allegations simply do not make logical sense and are inadequate to support a complaint against these defendants under § 1983. In any event, claims based on the *"wrongful* institution of legal process," *Wallace v. Kato,* 549 U.S. 384, 389–90, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (emphasis in original), are governed by the "favorable termination rule" in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *See Brown v.*

*Gardner,* Civil Action No. 3:14–4635–TMC, 2015 WL 893344, at *5 (D.S.C. Mar. 3, 2015). Under this rule, a cause of action pursuant to § 1983 does not accrue unless and until the underlying criminal charge has been dismissed or otherwise resolved in the plaintiff's favor.[5] *Id.*

Lucas next sues the Cabell County prosecutors, Cabell County Magistrate Wolfel, and Cabell County Judge Furgerson. Her complaint contains no specific allegations against the prosecutors or Judge Furgerson. With respect to Magistrate Wolfel, Lucas alleges that she overheard Magistrate Wolfel talking about her with an officer; she believes that he "destroyed the sound" on the tape of the preliminary hearing; she believes that he does not like her "due to his face expressions," and she feels that he improperly found probable cause to detain her on the abuse and neglect charges when the state's evidence was insufficient. (ECF No. 2 at 8). In the discovery documents, Lucas further contends that the "police officers, judge's [sic], prosecutors, lawyers, and others (companies, corporations, and officers) are corrupt" and work together against the poor to deprive them of life, liberty, justice, and property. (ECF No. 15-1 at 50).

Clearly, these conclusory allegations are not adequate to state a claim against the defendants under § 1983 or § 1985. Furthermore, Magistrate Wolfel is entitled to absolute judicial immunity for his actions during the preliminary hearing. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Therefore, Lucas fails to state meritorious claims against any of these defendants.

Lucas similarly makes no clear factual allegations against defendants Kohler,

---

[5] Lucas does not claim that she was falsely detained without legal process. Rather, she claims that her wrongful detention was "accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Wallace v. Kato,* 549 U.S. at 390.

Koffee, Crawford, Aldridge, Stepp, Lauren S., or the director of CPS. Her complaint against Lauren S. and CPS presumably arises from the agency's efforts to investigate the allegations of A'myreon A'merh-Lucas that his mother beat him. Her claims against Koffee and Kohler are likely related to their involvement in the wanton endangerment charges against her, and her complaint against Crawford, Aldridge, and Stepp apparently stem from the loss of an affidavit she prepared while at the Western Regional Jail, as well as other issues she encountered when housed at that facility. In response to her grievances and with her consent, Lucas was ultimately transferred to a different Regional Jail.  In each instance, Lucas has asserted general and conclusory allegations of prejudice, unfair treatment, and discrimination based upon her color (black), socioeconomic status (poor), and birthplace (not Huntington, West Virginia), without any specific factual bases. She insists that she is the victim of "invidious discrimination" by an "illegal town" that is denying her various constitutional rights, but she fails to allege with particularity how any specific act taken by any specific defendant resulted in any specific violation of her constitutional rights. Consequently, even construing Lucas's *pro se* complaint liberally, it plainly lacks sufficient factual allegations from which the Court can draw reasonable inferences that support a cognizable claim under § 1983 or § 1985. *See Iqbal*, 556 U.S. at 679.

### B. *Younger* Abstention

Taken as a whole, Lucas's filings make clear that her purpose in bringing the instant action is to convince this Court to assume its "rightful jurisdiction" over her criminal and civil cases. (ECF No. 14 at 4). However, the law is well-settled that a federal court may intervene in a state's pending criminal action only "in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996).  In

most cases, "national policy [forbids] federal courts to stay or enjoin pending state court proceedings," thus allowing state courts the freedom to determine matters of state law, vindicate important state interests, and address constitutional concerns without interference from federal courts, except when plainly necessary to address a situation of immediate and irreparable injury. *Younger v. Harris*, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[6] The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") explained:

> What lies behind *Younger,* of course, is a broader rule of comity: namely, that federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, "whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests."

*Cinema Blue of Charlotte, Inc.,* 887 F.2d 49, 52 (4th Cir. 1989). Simply stated, "federal courts should permit state courts to try state cases" given that federal constitutional claims can be addressed in state court, and "state court judges are fully competent to handle them subject to Supreme Court review." *Bonner v. Circuit Court of St. Louis,* 526 F.2d 1331, 1336 (8th Cir. 1975). In *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, the Fourth Circuit held that abstention is appropriate when the following three-pronged test is satisfied: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp.,* 38 F.3d 1392, 1396 (4th Cir.1994) (citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). If all three prongs of the *Martin Marietta* test are satisfied, a federal court may intervene

---

[6] Moreover, the Anti-Injunction Act, 28 U.S.C. § 2283, expressly prohibits federal courts from enjoining state court actions unless an express exception allows federal interference. None of the three exceptions found in the Anti-Injunction Act applies in this case. *See Employers Research Management Co., Inc. v. Shannon,* 65 F.3d 1126, 1130 (4th Cir. 1995).

"only where (1) 'there is a showing of bad faith or harassment by state officials responsible for the prosecution'; (2) 'the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions'; or (3) 'other extraordinary circumstances' exist that present a threat of immediate and irreparable injury." *Nivens v. Gilchrist ("Nivens II"),* 444 F.3d 237, 241 (4th Cir.2006) (quoting *Kugler v. Helfant,* 421 U.S. 117, 124 (1975)).

The first two prongs of the *Martin Marietta* test are easily met in Lucas's case. Regarding the first prong, Lucas states that she was arrested and is currently being held on wanton endangerment charges, as well as neglect and abuse charges. Accordingly, there are ongoing state criminal proceedings. The second prong of the test is met inasmuch as the State of West Virginia has an important interest in maintaining the efficient operation of its criminal justice system without undue federal interference. *Nivens v. Gilchrist*, 319 F.3d 151, 154 (4th Cir. 2003). As for the third prong, "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Gilliam v. Foster,* 75 F.3d at 881, 904 (4th Cir. 1996) (quoting *Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975)). Indeed, Lucas has raised all of her constitutional arguments in her filings with the state circuit court. (*See* ECF Nos. 15, 15-1). Furthermore, Lucas has shown no extraordinary circumstances, harassment, bad faith, or patently unconstitutional state laws or procedures that would justify this Court's intrusion into the ongoing state criminal proceedings.

This reasoning applies equally to the civil action filed by WVDHHR seeking to terminate Lucas's custody's rights over her three children. The Supreme Court later extended *Younger* abstention to state court civil proceedings and quasi-judicial

13

administrative proceedings when (1) the state was a party and important state interests were at stake and (2) the state system provided an opportunity for the adjudication of federal constitutional claims. *Moore v. Sims,* 442 U.S. 415, 423–26, 99 S.Ct. 2371, 2377–79, 60 L.Ed.2d 994 (1979); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The Court devised a three-part test to determine the appropriateness of abstention in a given action, requiring the District Court to consider (1) the nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings. *Middlesex County,* 457 U.S. at 432. Obviously, proceedings involving the safety and well-being of children living in the State of West Virginia implicate important state interests. *See, e.g.. Varney v. United States,* No. 2:12-cv-07171, 2012 WL 6765229, at *4 (S.D.W.Va. Nov. 19, 2012); *Shipway v. Jerlinksi,* No. 5:11cv00112, 2012 WL 1622395, at *5 (W.D.Va. Apr. 13, 2012). In addition, the proceedings are currently ongoing. Finally, West Virginia Code §49-6-1 *et seq.* sets out a well-defined procedure for these proceedings, which includes notice and an opportunity to be heard.

### C.  Exhaustion of State Remedies

To the extent that Lucas seeks release from her state criminal charges, her "exclusive federal remedy is to file a petition for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3), *after* [she] fully exhausts [her] state remedies." *Mitchell v. Dir., Beaufort County Detention Center,* C/A No. 6:07-382-JFA-WMC, 2007 WL 1231798, at *2 (D.S.C. Apr. 25, 2007) (citing *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490-

91, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Exhaustion has two aspects. First, a petitioner must utilize "all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett,* 134 F.3d 615, 619 (4th Cir. 1998) (citing *Matthews v. Evatt,* 105 F.3d 907, 910-11 (4th Cir. 1997)). As to whether a petitioner has used all available state remedies, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews,* 105 F.3d at 911).

If Lucas is convicted in her pending criminal cases, she has the remedy of filing a direct appeal to the Supreme Court of Appeals of West Virginia ("WVSCA") or a petition for a writ of habeas corpus in state court. In West Virginia, exhaustion is accomplished

in one of three ways: by (1) presenting the federal constitutional issues directly to the WVSCA through an appeal of the conviction or sentence; (2) filing a petition for a writ of habeas corpus under the WVSCA's original jurisdiction and receiving a dismissal with prejudice; or (3) filing a petition for a writ of habeas corpus in the appropriate circuit court followed by an appeal of the judgment to the WVSCA, if the result is adverse. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W.Va. 1995); *Bayerle v. Godwin*, 825 F.Supp. 113, 114-15 (N.D.W.Va. 1993); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545-46 (S.D.W.Va. 1986); *see also Gardner v. Plumley*, No. 2:12-cv-03386, 2013 WL 5999041, at *5 (S.D.W.Va. Nov. 12, 2013). In general, this Court may not review a state prisoner's habeas petition unless there has been "total exhaustion" of the presented issues. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Thus, when a petitioner has failed to exhaust her state court remedies, a federal habeas petition should be dismissed. *See Preiser v. Rodriguez*, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

## IV.  <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Plaintiff's Complaint, (ECF No. 2), be **DISMISSED**, without prejudice, and be removed from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the

date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED:** March 16, 2015.

Cheryl A. Eifert
United States Magistrate Judge